## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
## SOUTHERN DIVISION

| | |
|---|---|
| GINA AGULTO; GRACE PINEDA;<br>RONILO PANGAN; and RUBY PANGAN,<br><br>Plaintiffs,<br><br>vs.<br><br>ROBERT FARRELL; ANGELITA<br>FARRELL; AFO of OACOMA, INC. d/b/a<br>COMFORT INN & SUITES HOTEL; and<br>CHOICE HOTELS INTERNATIONAL, INC.,<br><br>Defendants. | CIV. 08-4052<br><br><br><br>**AMENDED COMPLAINT** |

COME NOW the Plaintiffs, Gina Agulto, Grace Pineda, Ronilo Pangan and Ruby

Pangan, through their attorneys of record, and for their amended complaint against the

Defendants, do hereby state and allege as follows:

### Parties

1.

Plaintiff Gina Agulto is a current resident of Worthington, Minnesota. She is a citizen of

the Philippines and is a legal immigrant in the United States on a continued presence status.

2.

Plaintiff Grace Pineda is a current resident of Worthington, Minnesota. She is a citizen

of the Philippines and is a legal immigrant in the United States on a continued presence status.

3.

Plaintiff Ronilo Pangan is a current resident of Worthington, Minnesota. He is a citizen

of the Philippines and is a legal immigrant in the United States on a continued presence status.

4.

Plaintiff Ruby Pangan is a current resident of Worthington, Minnesota. She is a citizen

of the Philippines and is a legal immigrant in the United States on a continued presence status.

5.

Upon information and belief, Defendants Robert Farrell and Angelita Farrell, husband and wife, were residents of Mitchell, South Dakota at all times relevant to the claims in this action. Defendants Robert and Angelita Farrell are currently incarcerated by the Bureau of Prisons.

6.

That Defendants, Robert Farrell and Angelita Farrell, at all times material to the claims in this action, were operating a motel doing business as Comfort Inn & Suites Hotel under the corporate name of AFO of Oacoma, Inc. d/b/a Comfort Inn & Suites Hotel. Defendant AFO of Oacoma, Inc. is a South Dakota corporation with its principal place of business in South Dakota.

7.

Defendant Choice Hotels International, Inc., is a Delaware corporation, with its principal place of business in Wilmington, Delaware. Defendant Choice Hotels International, Inc. is licensed to do business and conducts business throughout the State of South Dakota. Defendant Choice Hotels International, Inc. (hereinafter "Choice" or "Choice Hotels") is a franchisor that issues franchises to various individuals and entities entitling the franchisee to own and operate hotels under various brand names, including the Comfort Inn Hotels and Comfort Inn & Suites. Choice entered into a franchise agreement with Defendants Robert Farrell and Angelita Farrell, allowing the Farrells to operate a Comfort Inn & Suites hotel in Oacoma, South Dakota. This franchise agreement was in effect at the time of the events described in this complaint.

## Jurisdiction and Venue

8.

Plaintiffs bring this action for violation of 18 U.S.C. § 1595 (Civil Remedy for Peonage, Slavery, and Trafficking in Persons). This Court has subject matter jurisdiction pursuant to 28

2

U.S.C. § 1331 (federal question) because this civil action arises under the laws of the United States. Plaintiffs also bring state-law claims against Defendants. This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367, as these claims are so related to Plaintiffs' claims under 28 U.S.C. § 1331 that they form part of the same case or controversy under Article III of the United States Constitution.

9.

Venue is proper in this District Court pursuant to 28 U.S.C. § 1391. Upon information and belief, Defendants Robert and Angelita Farrell resided in this District at all times relevant to the claims in this action, the Defendant Choice conducts business in this District and several of the events giving rise to this action occurred in this District.

## Facts Relating to All Claims

10.

In 2007, Plaintiffs were brought to South Dakota from the Philippines for employment they believed would enable them to significantly raise their standard of living and provide prosperous financial futures for themselves and their families.

11.

Defendants Robert and Angelita Farrell (hereinafter "the Farrells") promised Plaintiffs, and five other overseas Filipino workers, employment in the Farrells' hotel in South Dakota under what appeared to be fair and advantageous conditions of working 40 hours per week at above the lawful hourly wage, which was significantly more than Plaintiffs could earn working in the Philippines.

3

12.

In order to take advantage of the Farrells' offer of employment in the United States, each of the Plaintiffs had to make significant personal sacrifices, including leaving minor children, family, friends and their homes to travel to the United States with complete strangers.

*Gina Agulto*

13.

Plaintiff Gina Agulto is an educated professional from the Philippines. She was a Food and Beverage Supervisor at a hotel in the Philippines when she received a job offer in 2000 from the Farrells. In 2000, however, Gina was pregnant with her third child and she had to decline the Farrells' offer.

14.

In 2002, Angelita Farrell began corresponding with Gina about working in the United States. By this time, Gina had been promoted to Front Office Manager, which was a relatively high-paying job in the Philippines. Gina accepted the Farrells' offer of employment and began the process of obtaining permission to work in the United States.

15.

Gina had to quit her job to devote sufficient time to process the necessary paperwork. Despite all of her efforts, and having quit her job, Gina was not given a visa in 2002 because the Farrells were not approved as employers. The financial strain from this situation was tremendous, as not only had Gina quit her job, but she owed $1,900 for the visa processing fees.

16.

Gina found new employment in the Philippines as a Marketing Supervisor. In August 2005, Angelita Farrell contacted Gina again and said the Farrells' application to hire Filipino workers had been approved. Gina accepted the Farrells' offer and was granted a visa.

4

17.

In order to accept the Farrells' offer of employment in the United States, Gina had to leave behind her husband and three young children in the Philippines.

*Grace Pineda*

18.

Plaintiff Grace Pineda is the primary breadwinner of her family. As the eldest child in her family, Grace is responsible for supporting her family, including her widowed mother who is unable to work to earn a living.

19.

At the time she learned of the Farrells' offer, Grace was a college professor in the Philippines, which is one of the few comparably well-paying jobs in the Philippines. She had a Bachelor of Science in Industrial Education, with a major in Food Technology. One of her students, Princess Javier, told her of the Farrells' offer of employment in the United States. Princess was the Farrells' niece.

20.

Despite her relatively high-paying job in the Philippines, Grace was lured into accepting the Farrells' offer because she could earn much more under their offer in a significantly shorter period of time than with her professorship. She sought to make enough money to pay her sisters' college tuition and to provide a better life for her mother.

21.

Based upon the Farrells' grand promises, Grace resigned her position as college professor to earn a living as a housekeeper at the Oacoma Comfort Inn & Suites.

5

*Ronilo and Ruby Pangan*

22.

Ronilo and Ruby Pangan, husband and wife, have four children. Angelita Farrell is Ruby's cousin. Angelita called Ruby in 2005, asking whether Ruby would work in the Farrells' hotel in South Dakota. Ruby was ecstatic about this employment opportunity and convinced her hesitant husband, Ronilo, to apply for a position as well. Working in America was Ruby's dream and she believed that God had answered her prayers.

23.

At the time the Farrells offered employment to Ruby, the Pangans owned a family restaurant and a pork/beef meat selling business in the Philippines. Before they left for the United States, they sold these businesses.

24.

To accept these "dream jobs" in America, Ronilo and Ruby had to make the largest sacrifice of their lives: leaving their four children in the Philippines, the youngest of whom was only seven years old when Ronilo and Ruby first left the Philippines.

*Defendants' Conduct*

25.

After being enticed by the Farrells' offers, Plaintiffs met the Farrells in Manila, the capitol city of the Philippines, where Plaintiffs were informed that they, along with the other five workers, would be required to pay for their airfare to the United States and pay their pro rata share of a $1,200 processing fee.

26.

The Farrells deceptively secured the necessary governmental approval for Plaintiffs to travel to the United States for employment purposes.

6

27.

The Farrells accompanied the Plaintiffs to the United States. They arrived in Sioux Falls on or about November 16, 2005. Upon Plaintiffs' arrival in South Dakota, they were forced by the Farrells into what would become the longest nightmares they have ever endured.

28.

Plaintiffs' passports and visas were confiscated by the Farrells upon their arrival in South Dakota.

29.

The Farrells transported Plaintiffs from Sioux Falls to Oacoma, South Dakota, where Plaintiffs would suffer unimaginable working conditions, physical and emotional abuse, and the loss of personal freedom.

30.

Plaintiffs were told by the Farrells that they would have an apartment to live in while working in the United States. The Farrells, however, delayed conveying the rest of the story until the Plaintiffs arrived in Oacoma. The rest of the story was that a small apartment, with a kitchen/living room, two bedrooms and one bathroom would be shared by six to nine people, including the Plaintiffs, who were strangers to each other except for Ronilo and his wife Ruby.

31.

The morning after arriving in Oacoma, the Farrells directed Plaintiffs to report to the Comfort Inn and Suites (hereinafter "the hotel") for unpaid training. They were told that their pay would begin to accumulate after they had been trained to do their assigned jobs at the hotel.

32.

During a late night meeting shortly after Plaintiffs' arrival, the Farrells revealed to the Plaintiffs what the real terms of their employment would be. Rather than being paid above

7

minimum United States' wages, they would be paid $3.00 per room. They were required to spend one hour cleaning each room. In addition, they would be forced to work long hours at the hotel, with no overtime compensation.

33.

The next revelation made by the Farrells was that the Plaintiffs were not only responsible for paying the Farrells their airfare of approximately $1,300, but they were each being charged a $1,200 processing fee, rather than splitting that fee among the nine workers, as the Farrells had assured them in the Philippines. Plaintiffs were forced by the Farrells to sign contracts acknowledging the existence of this debt.

34.

In addition to the above debt, each of the nine workers was charged $150 per month to live in the two-bedroom apartment that they were all sharing. At times, the Pangans stayed in the unfinished basement at the Farrells' residence in Mitchell, South Dakota, to be housekeepers for the Farrells with no pay, while still being charged $150 each for the apartment in Oacoma. The Pangans were forced to sleep on the basement floor while serving as unpaid help at the Farrell home.

35.

As a result of the newly revealed, escalating debt contracts, Plaintiffs were informed by the Farrells that they would be required to obtain a second job to pay the debt owed to them. The Farrells had arranged for some of the Plaintiffs to work at a Burger King close to the hotel and for some to work as housekeepers at the Hampton Inn in Mitchell, South Dakota. On the majority of their days in the United States, Plaintiffs would work their full shift at the hotel, usually averaging sixty (60) hours per week, and then work additional shifts at their second jobs.

8

36.

Throughout their servitude with the Farrells, Plaintiffs' work performance was consistently berated and the Farrells pressed Plaintiffs to perform their work better and faster with no additional compensation. Robert Farrell insisted that Plaintiffs call him "Big Boss Bob" and Angelita Farrell insisted on being called "Lady Boss."

37.

In an effort to keep Plaintiffs in a constant state of sleep deprivation, the Farrells would vary Plaintiffs' working schedules and schedule impromptu, mandatory hours-long meetings that would start after 10:00 p.m. and not conclude until the early morning. Plaintiffs were then expected to report for their normal working shifts regardless of what time the meetings concluded.

38.

During the mandatory meetings, the Farrells became increasingly threatening to Plaintiffs. The Farrells made clear that Plaintiffs' debt contracts to them were Plaintiffs' first priorities. The amount of Plaintiffs' debt contracts were calculated on a frequent basis and presented to Plaintiffs in a threatening manner.

39.

The Farrells dictated a plan of repayment of this debt, which required Plaintiffs to endorse their paychecks, both from the hotel and from their second jobs, and give them to the Farrells for deposit in the Farrells' bank account for the alleged repayment of Plaintiffs' debts. The Farrells confiscated well over eighty percent (80%) of each paycheck the Plaintiffs received from the hotel and their second jobs. The debt contracts were calculated by the Farrells to ensure that they could never be repaid by the Plaintiffs.

40.

During the mandatory meetings and at many other times during their employment, the
Farrells threatened Plaintiffs with both physical and legal harm if Plaintiffs tried to avoid paying
their supposed debts to the Farrells. Robert Farrell also threatened Plaintiffs that they would go
home in a coffin, or "Balikbayan box," if they disobeyed the Farrells.

41.

To isolate Plaintiffs from anyone that might help them escape their enslavement and
despair, the Farrells demanded that Plaintiffs not speak to anyone in the community, not accept
rides back and forth from their apartment to work, and stay in their apartment when they were
not at work. Angelita Farrell frequently inspected and called the apartment to ensure that the
Plaintiffs not working at that time were confined to their apartment.

42.

To further isolate Plaintiffs, contact with family members in the Philippines was heavily
regulated by the Farrells. The Farrells provided a telephone at the apartment, but that was almost
exclusively to be used for local calls, primarily for Angelita to call the apartment to ensure
Plaintiffs were not out in the community.

43.

In addition to the above abuse and isolation, Plaintiffs were required to walk one mile to
and from work along highways in harsh South Dakota winter conditions, regardless of the time
that their shifts ended or began. Punishment by the Farrells was certain and swift if Plaintiffs
were caught riding in a car rather than walking to and from work. Semi-trucks and other
vehicles driving on the highways blowing snow around made it difficult for Plaintiffs to see their
paths. On the majority of the Plaintiffs' walks to work, they encountered below-zero
temperatures with typical South Dakota wind chills that made it virtually unbearable to endure.

10

44.

Much to Plaintiffs' relief, their time in the United States was limited by their visas to two and one-half months. By the time their servitude had come to an end in February 2006, however, they were further in "debt" than when they had left the Philippines. Plaintiffs were told that they would be prosecuted if they did not return to the Farrells and Comfort Inn & Suites. Plaintiffs had no choice but to return to the United States.

45.

Under the influence of the Farrells' terrifying threats, Plaintiffs reluctantly returned to the United States on April 28, 2006, to work for the Farrells a second time. The Farrells managed to make Plaintiffs' working conditions even more oppressive and threatening the second time they came to the United States.

46.

The Plaintiffs experienced physical and emotional manifestations of the Defendants' abuse, which conditions they continue to experience.

47.

After Plaintiff Gina Agulto returned to the United States a second time, she convinced the Farrells that her mother was deathly ill and she needed to return to the Philippines. Upon her return to the Philippines, Agulto began her quest to save her friends still in America under the Farrells' dominion.

48.

Agulto's efforts resulted in an investigation of the Farrells by governmental authorities. With the help of the courageous Plaintiffs in testifying against their former masters, both Robert and Angelita Farrell were convicted in federal court of nine charges, including violations of 18 U.S.C. § 1581 (peonage), and 18 U.S.C. § 1592(a)(1) & (2) (document servitude), for their

11

treatment of the Plaintiffs described above.  See United States v. Robert Farrell and Angelita
Farrell, CR 07-30019 (D.S.D.).

49.

Each of the Plaintiffs was a victim of Robert and Angelita Farrells' violations of 18
U.S.C. §§ 1581 and 1592 and were also victims of the Farrells' violations of 18 U.S.C. §§ 1589
(forced labor) and 1590 (trafficking with respect to peonage, slavery, involuntary servitude, or
forced labor).

50.

Robert Farrell was sentenced in federal Court on February 22, 2008, to 50 months of
imprisonment, three years of supervised release, a $15,000 fine and a $900 special assessment.
See United States v. Robert Farrell, CR 07-30019-001 (D.S.D.).

51.

Angelita Farrell was sentenced in federal Court on February 22, 2008, to 36 months of
imprisonment, three years of supervised release, a $15,000 fine and a $900 special assessment.
See United States v. Angelita Farrell, CR 07-30019-002 (D.S.D.)

52.

The investigation and prosecution of the criminal actions in this Court against Robert and
Angelita Farrell are complete.

53.

Upon information and belief, Defendant Choice had numerous contacts with Plaintiffs
and was aware of the operations at the Oacoma Comfort Inn & Suites.  Choice conducted
numerous inspections of the hotel, exercised control over those operations, and chose to do
nothing about Plaintiffs' captivity.

12

## COUNT I
**Peonage, Slavery, Forced Labor and Trafficking in Persons**

54.

Plaintiffs reallege paragraphs 1-53 of this Complaint and hereby incorporate them by reference as if fully set forth herein.

55.

Defendants Robert and Angelita Farrell were convicted of violations of 18 U.S.C. §§ 1581 and 1592, which criminal actions have been finally adjudicated in this Court.

56.

In violation of 18 U.S.C. § 1581, Defendants Robert and Angelita Farrell were convicted of holding Plaintiffs to a condition of peonage.

57.

Defendants Robert and Angelita Farrell were convicted under 18 U.S.C. § 1592(a)(1) & (a)(2) of knowingly concealing, removing, confiscating and possessing Plaintiffs' actual and purported passports in the course of violating and intending to violate 18 U.S.C. §§ 1581, 1589 and 1590.

58.

In addition to being victims of Defendants Robert and Angelita Farrells' violations of 18 U.S.C. § 1581 and 1592(a)(1) & (a)(2), for which the Farrells were convicted, Plaintiffs are victims of Defendants Robert and Angelita Farrells' violations of 18 U.S.C. §§ 1589 (forced labor) or 1590 (trafficking with respect to peonage, slavery, involuntary servitude or forced labor).

59.

That the acts and omissions of the Defendants, Robert Farrell and Angelita Farrell, are imputable under Respondeat Superior to AFO of Oacoma, Inc. d/b/a Comfort Inn & Suites Hotel.

60.

Plaintiffs have suffered significant damages, including lost wages, and physical and mental pain and suffering, as a result of Defendant Robert and Angelita Farrell's conduct in violation of 18 U.S.C. §§ 1581 (peonage), 1592 (document servitude), 1589 (forced labor) or 1590 (trafficking with respect to peonage, slavery, involuntary servitude or forced labor) for which Plaintiffs are entitled to recover damages from Defendants pursuant to 18 U.S.C. § 1595(a).

61.

The conduct of the Defendants Robert and Angelita Farrell in this case constitutes oppression, fraud, and malice, actual and presumed.

62.

Thus, the Defendants Robert and Angelita Farrell, and AFo of Oacoma, by imputation, are liable for punitive damages in an amount sufficient to punish them and hold them accountable for their wrongful conduct and to deter such conduct in the future.

63.

Plaintiffs have incurred reasonable attorney's fees and costs in pursuing this action, which Plaintiffs are entitled to recover from Defendants pursuant to 18 U.S.C. § 1595(a).

14

## COUNT II
### Intentional Infliction of Emotional Distress

64.

Plaintiffs reallege paragraphs 1-63 of this Complaint and hereby incorporate them by reference as if fully set forth herein.

65.

Defendants Robert and Angelita Farrell engaged in extreme and outrageous conduct in their recruitment, employment, compensation and treatment of Plaintiffs, which conduct exceeded all bounds of decency usually tolerated by a civilized society.

66.

Defendants Robert and Angelita Farrell intended to cause Plaintiffs severe emotional distress or recklessly caused the Plaintiffs severe emotional distress.

67.

Defendants Robert and Angelita Farrell's conduct, in fact, caused Plaintiffs to suffer severe emotional distress.

68.

Plaintiffs suffered extreme disabling emotional responses to Defendants Robert and Angelita Farrell's conduct.

69.

That the acts and omissions of the Defendants, Robert Farrell and Angelita Farrell, are imputable under Respondeat Superior to AFO of Oacoma, Inc. d/b/a Comfort Inn & Suites Hotel.

70.

Defendants are liable to Plaintiffs for compensatory damages, including mental pain and suffering, as a result of the above conduct.

15

71.

The conduct of the Defendants Robert and Angelita Farrell in this case constitutes

oppression, fraud, and malice, actual and presumed.

72.

Thus, the Defendants Robert and Angelita Farrell, and AFO of Oacoma, by imputation,

are liable for punitive damages in an amount sufficient to punish them and hold them

accountable for their wrongful conduct and to deter such conduct in the future.

## COUNT III
### Negligent Infliction of Emotional Distress

73.

Plaintiffs reallege paragraphs 1-72 of this Complaint and hereby incorporate them by

reference as if fully set forth herein.

74.

Defendants Robert and Angelita Farrell owed a duty to Plaintiffs to provide safe and

reasonable working conditions, to comply with all applicable labor laws and to compensate them

appropriately for the work performed by Plaintiffs.

75.

Defendants Robert and Angelita Farrell failed to provide Plaintiffs safe and reasonable

working conditions, failed to comply with all applicable labor laws and failed to compensate

them appropriately for the work performed by Plaintiffs.

76.

As a result of Defendants Robert and Angelita Farrells' failure to perform their duties to

Plaintiffs, as described above, Plaintiffs were injured.

77.

Plaintiffs suffered emotional distress.

16

78.

Defendants Robert and Angelita Farrells' conduct was a legal cause of Plaintiffs' emotional distress.

79.

Plaintiffs suffered physical manifestations of the emotional distress.

80.

That the acts and omissions of the Defendants, Robert Farrell and Angelita Farrell, are imputable under Respondeat Superior to AFO of Oacoma, Inc. d/b/a Comfort Inn & Suites Hotel.

81.

Defendants Robert and Angelita Farrell, and AFO of Oacoma, by imputation, are liable to Plaintiffs for compensatory damages, including mental pain and suffering, for the above conduct.

## COUNT IV
### Assault

82.

Plaintiffs reallege paragraphs 1-81 of this Complaint and hereby incorporate them by reference as if fully set forth herein.

83.

Defendants Robert and Angelita Farrell intended to cause a harmful or offensive physical contact with the Plaintiffs, or an imminent apprehension of such contact.

84.

Defendants Robert and Angelita Farrell's conduct caused the Plaintiffs to fear such contact would immediately occur.

85.

The harmful or offensive physical contact did not occur.

17

86.

Plaintiffs did not consent to the Defendants Robert and Angelita Farrell's contact.

87.

That the acts and omissions of the Defendants, Robert Farrell and Angelita Farrell, are imputable under Respondeat Superior to AFO of Oacoma, Inc. d/b/a Comfort Inn & Suites Hotel.

88.

Plaintiffs were injured by the above conduct and are entitled to recover compensatory damages, including mental pain and suffering, from Defendants Robert and Angelita Farrell, and AFO of Oacoma, by imputation.

89.

The conduct of the Defendants Robert and Angelita Farrell in this case constitutes oppression, fraud, and malice, actual and presumed.

90.

Thus, the Defendants Robert and Angelita Farrell, and AFO of Oacoma, by imputation, are liable for punitive damages in an amount sufficient to punish them and hold them accountable for their wrongful conduct and to deter such conduct in the future.

## COUNT V
## Respondeat Superior-Agency Liability

91.

Plaintiffs reallege paragraphs 1-90 of this Complaint and hereby incorporate them by reference as if fully set forth herein.

92.

In 2005 through 2006, the Farrells were parties to a franchise agreement with Defendant Choice that allowed the Farrells to operate a Comfort Inn & Suites hotel in Oacoma, South Dakota.

93.

Defendant Choice Hotels, as the franchisor that entered into a franchise agreement with the Farrells, had sufficient control over the actions of the Farrells, its franchisees, in owning and operating the Comfort Inn & Suites hotel franchise in Oacoma, South Dakota, that the Farrells were acting within the scope of their actual, express, apparent, and/or implied authority, as well as acting within the scope of their employment duties.  Such conduct was reasonably foreseeable, and therefore, imputable to Defendant Choice Hotels, under the doctrine of respondeat superior.

94.

Pursuant to the doctrine of respondeat superior, Defendant Choice Hotels is responsible for the negligent conduct of Robert and Angelita Farrell.

95.

Under South Dakota law, Defendant Choice Hotels, as franchisor, is liable to Plaintiffs for the intentional torts of the Farrells, as franchisees, against Plaintiffs in operating the Comfort Inn & Suites hotel in Oacoma, South Dakota.

96.

Plaintiffs were injured as a result of Defendant Robert and Angelita Farrell's conduct, for which Defendant Choice Hotels is liable to Plaintiffs for damages.

19

## COUNT VI
## Negligence - Defendant Choice Hotels

97.

Plaintiffs reallege paragraphs 1-96 of this Complaint and hereby incorporate them by reference as if fully set forth herein.

98.

Defendant Choice Hotels exercised sufficient control over its franchisees, Robert and Angelita Farrell, that Choice Hotels owed the following non-exclusive duties to employees of its franchisees: to exercise reasonable care in selecting individuals with whom to enter into franchise agreements; to provide safe working conditions; and to supervise its franchisees' compliance with all labor laws in the United States.

99.

Defendant Choice Hotels failed to perform its duties to employees of Choice's franchisees.

100.

Plaintiffs were injured as a result of Defendant Choice Hotel's failure to perform its duties to employees of its franchisees, Robert and Angelita Farrell, and are entitled to recover damages from Defendant Choice Hotels for such injuries.

## COUNT VII
## Negligence - Defendant AFO of Oacoma d/b/a Comfort Inn & Suites Hotel

101.

Plaintiffs reallege paragraphs 1-100 of this Complaint and hereby incorporate them by reference as if fully set forth herein.

20

102.

Pursuant to the doctrine of Respondeat Superior, Defendant AFO of Oacoma d/b/a
Comfort Inn & Suites Hotel is responsible for the conduct of Robert and Angelita Farrell as
alleged in the Amended Complaint.

103.

Under South Dakota law, Defendant AFO of Oacoma d/b/a Comfort Inn & Suites Hotel
is liable to the Plaintiffs for the intentional torts of the Farrells against Plaintiffs in operating the
Comfort Inn & Suites Hotel in Oacoma, South Dakota.

104.

Plaintiffs were injured as a result of Defendant Robert and Angelita Farrell's conduct,
imputable to Defendant, AFO of Oacoma d/b/a Comfort Inn & Suites Hotel, and therefore liable
to Plaintiffs for damages.

WHEREFORE, Plaintiffs respectfully pray for the following against the Defendants:

(1)     For compensatory, general, and special damages in an amount to be determined
        by the trier of fact to compensate Plaintiffs for all injuries sustained as a result of
        the conduct of the Defendants;

(2)     For punitive damages in an amount to be determined by the trier of fact;

(3)     For Plaintiffs' costs and disbursements herein;

(4)     For Plaintiffs' attorney's fees in this action;

(5)     For prejudgment and post-judgment interest; and

(6)     For such further relief as the Court deems proper.

21

Dated this 3ʳᵈ day of September, 2009.

JOHNSON, HEIDEPRIEM,
ABDALLAH & JOHNSON, L.L.P.

By _____
Steven M. Johnson
Ronald A. Parsons, Jr.
P.O. Box 2348
Sioux Falls, SD  57101-2348
(605) 338-4304
steve@jhajlaw.com
ron@jhajlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copy of the Amended Complaint

was served via e-filing, upon the following individuals:

Mr. Clint Sargent
Danforth & Meierhenry, L.L.P.
315 South Phillips Avenue
Sioux Falls, SD 57104-6318

Ms. Melissa C. Hinton
Davenport, Evans, Hurwitz & Smith,L.L.P.
206 West 14th Street
Sioux Falls, SD  57101-1030

Mr. William Fuller
Fuller & Sabers, LLP
7521 South Louise Avenue
Sioux Falls, SD  57108

on this 3ʳᵈ day of September, 2009.

BY _____
Steven M. Johnson
Ronald A. Parsons, Jr.

22